Z.T., an infant by her parents and natural guardians, ANNIE TAYLOR and GARNER TAYLOR, and ANNIE TAYLOR and GARNER TAYLOR, individually, Plaintiffs,

against
Long Island College Hospital, JOHN DOE, M.D., and JANE DOE, M.D., (being fictitious and unknown to plaintiffs, the person or parties intended being the health care professionals who rendered improper medical care and treatment to the infant plaintiff and her obstetrical mother), Defendants.


13797/2008 

Attorney for Plaintiff
JAMES B. BAYDAR, ESQ.
PEGALIS & ERICKSON, LLC
Attorneys and Counselors at Law
1 Hollow Lane, Suite 107
Lake Success, New York 11042
Attorney for Defendant
Barry G. Saretsky
Saretsky Katz & Dranoff, L.L.P.
475 Park Avenue South
New York, New York 10016


Carolyn E. Demarest, J.

The Court has been presented with a proposed Infant Compromise Order in this case involving a child born prematurely at 24 weeks gestation at Long Island College Hospital who continues to suffer significant neurological and developmental disabilities as a result of brain [*2]injury sustained during delivery admission, which will prevent her from ever living independently. The child therefore qualifies, under Public Health Law §2999-h, to be provided with all future health care costs, as defined in Public Health Law §2999-h(3), through the New York State Medical Indemnity Fund (MIF), established "to provide a funding source for future health care costs associated with birth related neurological injuries, in order to reduce premium costs for medical malpractice insurance coverage"(Public Health Law §2999-g).
By order of this Court entered in Matter of the Application of the Long Island College Hospital, Kings County Index No 9188/11, on February 16, 2012, (the Implementation Order), the LICH Malpractice Trust (the Trust) was created, using certain of the assets of the Long Island College Hospital that were not transferred to the State University of New York pursuant to the Order of May 13, 2011, in that action, for the purpose of administering and paying claims against the Long Island College Hospital for medical/professional malpractice, as directed in the May 13, 2011 Order. Although the MIF had been established at the time the Implementation Order was entered, and had taken effect on October 1, 2011, neither the Implementation Order, nor the "Proceedings" directing the manner in which claims were to be processed and resolved, contains a reference to the MIF. However, the MIF is clearly applicable to qualifying claims presented to the Trust. The difficulties herein arise from the interplay of the MIF damages allocation and the discount applicable to non-fund damages, as provided in the Implementation Order, which impact the computation of attorneys' fees due to plaintiffs' counsel. The difficulties are exacerbated by the inclusion in the Established Claim Value of the $50,000 settlement of a claim by the infant's parents, to be paid in full out of the discounted Initial Distribution from the Trust, though this element of the settlement, while not subject to the fund/non-fund allocation, is subject to the discount under the Implementation Order and the Plan.
Pursuant to the Implementation Order and the Plan and Proceedings (which are incorporated into the Implementation Order), through negotiation prior to mediation, mediation or, ultimately, arbitration if agreement cannot be otherwise reached, an Established Claim Value (ECV) is to be placed on the case. As an incentive to induce settlement short of arbitration, claimants like those at bar here [FN1]
were offered an immediate initial payment of 60% of an agreed ECV, with any subsequent payments deferred to a time when the available assets remaining in the Trust permitted such payments. According to the Plan for Valuing and Paying Claims (the Plan), it was anticipated that 75% of the ECV for a claim like that at bar would ultimately be paid, though any additional payments remain subject to the assets in the Trust. Of the 223 original Trust claims, most have been routinely resolved by application of this process since the Trust was established. However, an issue has arisen in this case regarding the role of the ECV and the computation of attorney's fees when MIF funds are available to cover a portion of the ECV. It is recognized that an allocation to MIF funds does not represent actual [*3]payment to or for the benefit of a claimant but "is an amount agreed to by the parties, pursuant to Public Health Law §2999-j(14), on which is calculated the amount of attorneys' fees to be paid by defendant to claimant's counsel, so as to reflect the benefit obtained for claimant by entry into the Fund" (Joyner-Pack v State of New York, 38 Misc 3d 903, 904 (Court of Claims 2012]).
Public Health Law §2999-j(6) (a) provides that, upon a determination that a claimant has suffered birth- related neurological injury, "all payments for future medical expenses shall be paid [by the MIF] in lieu of that portion of the settlement agreement that provides for payment of such expenses". The parties have agreed, and the Court concurs, that the ECV for this case is $5,000,000, inclusive of the $50,000 payment to the parents on their claim, and that, after deducting the $50,000 to be paid to her parents, $4,950,000 is the value of the child's recovery, of which 60% ($2,970,000) is attributable to the MIF (Fund allocation) and 40% ($1,980,000), is non-Fund damages for which the Trust is liable.
For purposes of computing attorney's fees and directing payment in accordance with the settlement, based upon the allocation of 60% of the child's recovery to the MIF, the Adjusted ECV is $2,030,000, inclusive of the parents' recovery. The amount of the actual initial non-fund cash payout (Initial Distribution), however, is $1,218,000 based upon the discounted initial payment of 60% pursuant to the Implementation Order and Proceedings. While the total Trust liability for the infant's claim and her parent's claim is $2,030,000, as discounted under the Plan and Proceedings to 60%, $1,218,000 is the Initial Distribution, upon which the attorney's fee for non-fund damages must be computed. See Matter of Khalil v Comrie, Kings County Index No 27522/2009 ( Order of November 26, 2013), in which this Court directed the method of computation, pursuant to Judiciary Law §474-a, such that the attorney is entitled to receive his or her fee only on the sum recovered by plaintiff and not upon the full ECV of the case. The attorney will continue to be entitled, however, to receive a proportional fee, taking into consideration the prior fees received consistent with Judiciary Law §474-a, of any subsequent payments from the Trust, which should be computed based upon the Adjusted ECV for the case. Because the parents' claim will have been fully paid from the Initial Distribution, the entirety of any subsequent distribution belongs to the infant and must be deposited, less the $10% to which counsel is entitled, into the restricted account created for her benefit.[FN2]
Since the allocation to MIF fund damages has been made initially based upon the ECV, there is no need to apportion any subsequent distributions from the Trust between fund and non-fund damages.
Public Health Law §2999-j(14) provides that the fee of a qualified plaintiff's [*4]attorney is to be based upon the "full sum of the settlement" and is to be paid by the defendants or an insurer (here, the Trust) in a lump sum, except that the fee allocated to the non-fund damages is to be deducted from the non-fund portion of the award and is thus paid by the plaintiffs (see generally, Mendez v New York and Presbyterian Hospital, 34 Misc 3d 735, 738, 742-743 [Sup Ct, Bronx County 2011]). Adding the fund portion of the award, $2,970,000, to the total Initial Distribution of non-fund damages, $1,218,000, yields $4,188,000 as the present full amount of the settlement, subject to any further payout by the Trust which would result in a further attorney's fee of 10% of such payout, as noted above. Applying the sliding scale set forth in the Judiciary Law yields a total attorney's fee of $565,043.72 due to plaintiff's counsel, plus reimbursement for costs and disbursements. Apportioning this sum, as directed by the statute, 40% to the Trust non-fund payout, $226,017.48 is the amount of attorney's fees to be deducted from plaintiffs' recovery, in addition to disbursements, to be apportioned between the infant's and her parents' recovery. Counsel would be entitled to receive an additional $339,026.24 attributable to the fund damages directly from the Trust. Plaintiffs' counsel has agreed, however, to accept only $263,274.87 in full satisfaction of MIF-related fees. 
It is noted that, at this Court's direction, plaintiffs' counsel has obtained an Order Appointing Temporary Guardian from the Queens County Supreme Court (Matter of Application of Annie Taylor and Garner Taylor, Queens County Index No 4527/16), wherein Justice Lee A. Mayersohn expressly authorized Annie Taylor to receive the proceeds of this action as "Property Management Guardian for Z T" for deposit into a restricted guardianship account at Charles Schwab & Co under the direction of Fogel Capital Management, Inc. In light of the Queens County Order, and with the understanding that permanent letters of guardianship are expected to be obtained following a full accounting to that Court, with continuing oversight by that Court, this Court is prepared to authorize such disposition of the proceeds of this action on behalf of the infant. This Court has made independent inquiries into the integrity of this proposal and the associated costs and agrees that this is a suitable plan for the protection of the child's assets. Counsel are directed to prepare and execute an amended Settlement Agreement and Release and submit to this Court a proposed Compromise Order in conformity with this decision.
This constitutes the decision and order of the court.
E N T E R,
Carolyn E. Demarest
J. S. C.



Footnotes

Footnote 1:The percentage of immediate payout varies depending upon the category into which defendants fall.

Footnote 2:Given the devastating impact of the infant's injury upon the entire family, and particularly the increased burden placed upon the parents, this Court is willing to approve such payment, though it will diminish the infant's initial recovery.